(Franklin Co., O., Common Pleas.)

THE WYANDOT CLUB v. A. C. SELLS.

---

(1). Percolating waters are those which pass through the ground, beneath the surface of the earth without definite channels, and the same rules of law applicable to such waters govern those streams which have definite channels, but the course of which is unknown and unascertainable.

(2). Where there is nothing to show that the waters of a spring or well are supplied by any defined flowing stream, the presumption would be that they have their source in the ordinary percolations of water through the soil.

(3). Percolating waters, and those whose sources are unknown, or whose channels are undefined, and whose course is not known or notorious, belong to the realty in which they are found. Such waters may spread themselves in any direction through the earth, and it is therefore impossible to avoid disturbing them, without relinquishing the necessary enjoyment of the land through which they

pass, and the law does not therefore forbid their disturbance.

(4). The law cannot properly limit the ordinarily absolute dominion of the owner of the soil, in respect to things concealed and hidden in the bowels of the earth, nor recognize the adjoining proprietor as having claims upon or rights in a thing passing under the surface of his neighbor's land, the existence of which was first revealed by the very act which would constitute the subject matter of his complaint.

## CHARGE OF THE COURT.

Gentlemen of the Jury:

Percolating waters are those which pass through the ground, beneath the surface of the earth without definite channels, and the same rules of law applicable to such waters govern those streams which have definite channels, but the course of which is unknown and unascertainable.

Where there is nothing to show that the waters of a spring or well are supplied by any defined flowing stream, the presumption would be that they have their source in the ordinary percolations of water through the soil.

Percolating waters, and those whose sources are unknown, or whose channels are undefined, and whose course is not known or notorious, belong to the realty in which they are found.

Percolating waters, and those whose channels are unknown, and whose course is undefined or unascertainable, may spread themselves in any direction through the earth, and it is therefore impossible to avoid disturbing them, without relinquishing the necessary enjoyment of the land through which they pass, and the law does not therefore forbid their disturbance.

The law cannot properly limit the ordinarily absolute dominion of the owner of the soil, in respect to things concealed and hidden in the bowels of the earth, nor recognize the adjoining proprietor as having claims upon or rights in a thing passing under the surface of his neighbor's land, the existence of which was first revealed by the very act which would constitute the subject matter of his complaint.

I charge you that the defendant, A. C. Sells, is the absolute owner of his property from the heavens to the center of the earth, and that he had a legal right to dig a spring, or excavate for a stone quarry, upon any part of his own land, for the purpose of obtaining water or stone, although the digging of such spring or excavating for such stone quarry, may have diminished the water in the plaintiff's spring, and the plaintiff has no right of action against the defendant for so diverting the water, if you find he has done so, unless it is first proven by a preponderance of the evidence that the water which comes into this spring, is supplied by an underground stream, which flows in a known and well denfied channel, whose course was well defined and known or notorious.

In addition to the waters which percolate, ooze and filtrate through the earth, there are also found in the bowels of the earth, subterranean or underground water courses, and these are divided into two distinct classes, —those whose channels are known or defined, and those unknown and undefined. Adjoining proprietors or landowners have the same right to dig in their premises, and to intercept the course and flow of subterranean or underground waters, whose channels are unknown and undefined, as they would have to intercept water percolating, oozing or filtrating through the earth, and if a land-owner digs a hole in his own land, for purposes connected with the use of his own land, and thereby cuts off or diverts the flow of water from such subterranean or underground channels or water courses, the adjoining proprietor has no right of action against him for so doing.

If an underground current of water flows in a well defined and well known channel, the course of which can be distinctly traced, it is governed by the same rules of law that govern streams flowing upon the surface of the earth. The owner of the land under which such a stream flows, can therefore maintain an action for a diversion of it, if such diversion takes place, under such circumstances as would enable him to recover if the stream had been wholly above ground; but before he can recover, he must

show by a preponderance of the evidence that the underground water flows in a known, distinct and well defined channel.

Interference with, or the diverting of percolating waters, or those underground streams which flow in confined channels, but whose courses are not known, and are undefined, does not give rise to a cause of action in favor of an adjoining proprietor, and the owner of land in which they are found may use them or divert them as he pleases, without being liable to the adjoining proprietor, even if his use of such streams or such water wholly deprives the adjoining proprietor of water which he had theretofore been accustomed to use and enjoy upon his promises.

Before a land owner can 'maintain an action against an adjoining proprietor for the diversion of a subterranean stream, he must show by a preponderance of the evidence, that such subterranean stream flows in a permanent, distinct and well known and well defined channel from the land of the adjoining proprietor on to his land.

In this action the plaintiff seeks to recover a judgment for damages for the alleged malicious diversion of water which it claims supplied its spring.

If the defendant diverted the water which supplied plaintiff's spring he is not liable for such diversion unless he thereby violated a legal right of the plaintiff. So far as it may be necessary it is your duty to determine the questions of fact submitted; and it is the duty of the court to explain and give to you the law applicable to the case, so that when you shall have determined what facts appear in the proofs, you may apply the law to the facts in order to reach a proper verdict.

Subsurface waters may be divided into two classes:

1. Subsurface waters which, without any permanent, distinct or definite channel, percolate in small veins, ooze, or filter from the lands of one owner to the lands of another.

2. Subterranean streams which flow in a permanent, distinct and well defined channel from the lands of one owner to those of another.

As to waters embraced in the first class, viz.; subsurface waters which, without any permanent, distinct or definite channel, percolate in small veins, ooze, or filter from the lands of one owner to the lands of another, the law recognizes no correlative rights as between owners of adjoining lands; hence if the defendant, by digging in his own land, thereby cut off or diverted underground waters which had been accustomed to percolate and ooze through his land to the land of the plaintiff, and supply or contribute to the plaintiff's spring, any damages thereby occasioned to the plaintiff is a damage for which the defendant is not liable. For as to waters of this class, in the lands of the defendant, the plaintiff has no legal right—such waters belong to, and are subject to the control and dominion of the defendant as much as the soil itself; and any diversion or use he may make of them, violates no legal right of the plaintiff. No right of action can arise where no right is violated.

As to the waters of the second class, viz.: subterranean streams which flow in a permanent, distinct and well-defined channel from the lands of one owner to those of another, they may be considered under two heads, (a) those whose existence or course is neither known nor notorious; (b) those whose existence and course are known or notorious. Those falling under head (a), viz.: those whose existence or course is neither known nor notorious, are governed by the same rules of law as are applicable to percolating waters. All such waters, the law considers as belonging, like percolating waters, to the owner of the land in which they may be, and the owner of adjoining land has no legal right in or to them, and, of course, has no right of action for their use, diversion or destruction.

But as to the waters of the second class falling under head (b), viz.: subterranean streams which flow in a permanent, distinct and well defined channel from the lands of one owner to those of another, whose existence and course are known or notorious, the

law as between adjoining proprietors of land recognizes the existence of certain correlative rights.

As to such streams the owner of the lower land has the legal right to have the stream flow to his land at its natural and ancient place and level. The upper proprietor may use the water of such stream for any purpose to which it can be applied beneficially without material injury to the rights of others—he has the right to the ordinary use of the water on his own land, for the purpose of supplying his natural wants, including the use of the water for the domestic purposes of his land, such as drinking and cooking and for his stock. For these natural uses he may, if necessary, consume all the water of the stream. But he has no right to waste the water to such an extent as to destroy, or materially impair, the right of the lower owner. He may use the water for all domestic purposes connected with the use of his land, and for any damage resulting to the lower proprietor in consequence of such use by the upper proprietor, the latter is not liable; nor is he liable for any misuse or waste of the water, unless in consequence thereof the lower proprietor, sustains an injury. But if he diverts the water materially over and beyond what he may reasonably need for domestic purposes connected with the use of his land, and if in consequence of such excessive diversion of the water, the lower proprietor is damaged, for such damage the upper proprietor is liable. Unless the existence and course of such streams are known or notorious, the lower proprietor has no right to the waters thereof before they reach his land and for this diversion by the upper proprietor while they are on his land, the lower proprietor has no remedy, or right of action. Hence the defendant is not liable in this action unless there was a subterranean stream which flowed in a permanent, distinct and well defined channel from his land to the land and spring of the plaintiff, the existence of course of which was known or notorious. If there was such a stream and its existence or course was neither known nor notorious, the plaintiff had no legal right in or to the stream or the waters thereof, in the defendant's land, and the defendant might lawfully dig upon his own land and if by doing so he should divert the water and thereby impair or destroy the plaintiff's spring, he would not be liable to the plaintiff.

If it does not appear from the evidence that the waters which come to the surface are supplied by a subterranean stream which flows in a permanent, distinct and well-defined channel, they are presumed to be formed by the ordinary percolations of water in the soil. Hence you can not find that the waters which supplied the plaintiff's spring, was a subterranean stream flowing in a permanent, distinct and well defined channel unless such fact is proved by a preponderance of the evidence. The burden of proof is also upon the plaintiff to show that the existence and course of such a stream was known, or notorious. In this connection the term "notorious" means that which is publicly or generally known and spoken of; and the term "known", which is not here synonomous with "visible", refers to knowledge by reasonable inference. The burden of proof is on the plaintiff to show that without opening the ground by excavation or having recourse to abstruse speculations of scientific persons, men of ordinary powers and attainments would know, or could with reasonable diligence ascertain, that the stream, when it emerges into light, comes from, and has flowed through a permanent, definite and well-defined channel.

The defendant is not liable in this action unless he violated a legal right of the plaintiff. If no such right was violated, your verdict must be for the defendant. If the act of the defendant was not unlawful,—that is, if he violated no legal right of the plaintiff —his motive in doing the act, whether good or bad, whether malicious, or otherwise, can make no difference. If the act was lawful, a bad motive could not make the act unlawful. If the act was unlawful, a good motive could not make the act lawful. Hence

the question of malice can give no right of action and is not material to the legal rights of the parties unless you shall find that the defendant has violated a legal right of the plaintiff and shall come to consider the matter of damages, as to which I shall advise you presently.

If there was a subterranean stream which flowed in a permanent, distinct and well-defined channel from the defendant's land to the plaintiff's land and spring, and supplied the latter with water, and if the existence and course of the stream were known or notorious, and if the defendant by digging in his own land diverted a portion of the water of such stream and caused it to flow out on his own land, for such diversion the defendant is not liable, unless he diverted more water than was reasonably needed for domestic purposes connected with the use of his land; but if he diverted materially more of the water of said stream than was reasonably needed for such domestic purposes, and if by reason of such diversion of water in excess of what was reasonably needed for domestic purposes,—the water of the plaintiff's spring was diminished in quantity from flowing out on the plaintiff's land at its natural and ancient grade, then, if the diversion of such excess of water materially damaged the plaintiff, the defendant is liable in damages.

If you find for the plaintiff, you should allow it such sum as will fairly and reasonably compensate it for the injury sustained by it, if any, in consequence of the wrongful act of the defendant. The measure of damages is the diminution, if any, at the time of the commission of the wrongful act, in the market value of the plaintiff's property, in consequence of that act; and you may also allow the plaintiff interest thereon, from the time of the injury to the present date at the rate of six per cent. per annum. And if you shall find from the evidence that the defendant did the wrongful act maliciously, then and in such case, you may allow to the plaintiff reasonable counsel fees for the services of his attorneys in and about the prosecution of the present action. The law permits no evidence to be offered of the value of such attorney fees but leaves the allowance and the amount thereof to the discretion of the jury; and if the defendant did the wrongful act maliciously you may, in addition to such damages, allow to the plaintiff such further sum, by way of punishment—(punitive damages)—as you may deem just and proper. But while you are authorized, if the injury was malicious, to allow punitive damages, you are not required to allow them unless you conclude they should be allowed—their allowance, or disallowance, and if allowed the amount thereof, must be determined by the jury in the light of all the circumstances. and evidence.

If you find for the defendant you will simply say so.